## Case No. 3,301.

### COX v. GOULD.

### [4 Blatchf. 341.][1]

Circuit Court, N. D. New York. Sept. Term, 1859.

MORTGAGE BY CORPORATION — EVASION OF GENERAL MANUFACTURING ACT OF NEW YORK — LIABILITY OF STOCKHOLDER FOR DEBTS.

1. A corporation formed under the general manufacturing law of New York, passed February 17, 1848 (Laws 1848, c. 40), is, by the 2d section of that act, authorized to purchase, by its corporate name, such real estate as is necessary to enable it to carry on its operations, but is forbidden, by the same section, to "mortgage the same or give any lien thereon." Where such a corporation authorizes its agent to make such purchase for its benefit and on its account, and the real estate is conveyed to the agent, and he gives a bond and a mortgage on it in his own name, for the purpose of evading the provisions of such 2d section, the statute is violated, and an agreement by the company to indemnify the agent against all liability by reason of the transaction, is void as against an innocent stockholder in the company.

2. Under the 24th section of the said act, which provides that "no stockholder shall be personally liable for the payment of any debt contracted by any company formed under this act, which is not to be paid within one year from the time the debt is contracted," if such agreement by the company to indemnify the agent, and the payment of money by the agent

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

on his bond, constitute the agent a creditor holding a debt which may be enforced against an individual stockholder, such debt was contracted not when such payment was made by the agent, but when such agreement to indemnify was made by the company.

This was a demurrer to a declaration. The declaration alleged that, on the 2d of January, 1854, a certain corporation, known as "The New York City Paint Works Company," was incorporated under the act of the legislature of the state of New York, passed February 17th, 1848, entitled "An act to authorize the formation of corporations for manufacturing, mining, mechanical, or chemical purposes" (Laws 1848, c. 40), and the acts amendatory thereof, by the filing in the offices specified in the act, of the proper certificates, and had its office and principal place of business in the city of New York; that, on the 4th of January, 1854, the plaintiff [Abraham L. Cox], and one Henry Fake, and one James H. Salisbury, were appointed by the company a special committee to, amongst other things, negotiate for the purchase, for the company, of twelve lots of land, then the property of one John A. Bunting, situated in the city of New York, on the East river, between 88th and 89th streets, being together about two hundred feet deep and one hundred and fifty feet in width, for the uses of the company, and for the purpose of a manufactory; that, thereupon, the plaintiff and Fake and Salisbury negotiated and contracted for the purchase of the twelve lots, for the uses and purpose and under the authority aforesaid, and reported to the company their action in the premises, which report was adopted and the plaintiff and Fake and Salisbury were continued as a committee for completing the purchase; that, thereupon, the plaintiff and Fake and Salisbury, as such committee, completed and effected the purchase of the lots, in their own names, for the benefit and on account of the company, and for the uses and purpose aforesaid, and for no other purpose whatever, such purchase in their own names being the only legal way in which the same could be purchased for the benefit, account, uses, and purpose aforesaid, because the company could not then pay the whole amount of the purchase-money of the premises; that, thereupon, the plaintiff and Fake and Salisbury received from Bunting, on the 14th of January, 1854, a deed, conveying to the plaintiff and Fake and Salisbury the twelve lots of land, for the consideration of $25,000, and, thereupon, the company paid to Bunting the sum of $1,000, as a part of the purchase-money of the premises, and, to secure what was left unpaid, the plaintiff and Fake and Salisbury executed to one Joseph Foulke their bond, in the penal sum of $26,000, conditioned to pay Foulke $13,000 on the 1st of March, 1858, with interest at the rate of six per cent. per annum, and also their mortgage on the premises, which was received by said Foulke in lieu of a prior mortgage on the premises for the same

amount, theretofore given by Bunting to Foulke; that the plaintiff and Fake and Salisbury also executed to Bunting their bond, in the penal sum of $22,000, conditioned for the payment of $11,000, (that being the amount of the residue of the purchase-money,) on the 14th of January, 1859, with interest thereon from the 14th of January, 1854, at the rate of seven per cent. per annum, payable half yearly, on the first days of May and November, with a condition, that the entire principal should, at the option of Bunting, become due, on a default for thirty days in the payment of interest; that the plaintiff and Fake and Salisbury also executed a mortgage on the premises, as collateral security for the moneys mentioned in the condition of the bond, which mortgage contained a provision like that contained in the bond, in regard to the principal becoming due in case of default for thirty days in the payment of interest; that, in consideration thereof, and that the plaintiff and Fake and Salisbury had negotiated and effected the purchase of the premises, for the benefit and on the account of the company, and for the uses and purposes aforesaid, and that the plaintiff and Fake and Salisbury had taken the deed thereof in their own names, for the benefit and account of the company, and for the uses and purposes aforesaid, and that the plaintiff and Fake and Salisbury had executed and delivered to Foulke and Bunting their said bonds and mortgages, to secure the unpaid portion of the purchase-money of the premises, and that the plaintiff and Fake and Salisbury would convey the premises to the company, the company undertook, and promised the plaintiff and Fake and Salisbury to hold harmless and indemnify them against the bonds and mortgages, and to pay the said bond and mortgage so given by the plaintiff and Fake and Salisbury to Bunting, on the account of the company, in the purchase of the property, according to the conditions of the same; that, relying on the said promise and undertaking of the company, the plaintiff and Fake and Salisbury, on the 25th of January, 1854, executed a deed of the premises to the company, which deed was, in terms, made expressly subject to the said two mortgages, and in and by which deed the company covenanted to assume and pay the mortgage to Bunting, as a part of the consideration for such conveyance, and which said deed was executed by the president of the company, in his official capacity, as such president, and by him sealed with the corporate seal of the company, he being thereunto lawfully authorized by the company; that the company accepted the deed, and took possession of the premises conveyed thereby; that the company did not pay the said sum of $11,000, or the interest thereon, according to the condition of the bond and mortgage to Bunting, and that the said sum, and the interest thereon from the 1st of November, 1854, being due and wholly unpaid,

Bunting, on the 25th of October, 1855, commenced a suit, and foreclosed the mortgage, and sold the premises, and obtained and docketed a judgment for a deficiency of $11,492.96, against the plaintiff and Fake and Salisbury, which sum the plaintiff was compelled to pay, and, on the 7th of July, 1856, did pay to Bunting; that the company did not repay the same, or any part thereof, to the plaintiff, or indemnify him therefor; that, thereupon, he commenced a suit, in the circuit court of the United States for the southern district of New York, against the company, for the collection of his said debt for the money paid as such deficiency, within one year after said debt became due; that the company was insolvent and had no property; that the whole capital stock of one hundred thousand dollars, as fixed and limited in the certificate of the incorporation thereof, had not been paid in, nor had the president and a majority of the trustees made, signed, and sworn to a certificate of the amount of the capital stock, and that the whole amount thereof had been paid in; that the defendant [Thomas Gould] was a stockholder and a holder and owner of five shares of stock in the corporation, to the amount of five thousand dollars, at the time when the company was in possession of the twelve lots of land, and at the time when the plaintiff paid the said sum of $11,492.96, and was now such stockholder; and that, by means of the premises, the defendant became individually liable for the said sum.

Samuel Blatchford and Clarence A. Seward, for plaintiff.

David Wright, for defendant.

HALL, District Judge. The 2d section of the act of February 17th, 1848, under which the paint works company was incorporated, declares, that the corporations created under that act "shall, by their corporate name, be capable in law of purchasing, holding and conveying any real and personal estate whatever, which may be necessary to enable the said company to carry on their operations named in such certificate," (their certificate of incorporation,) "but shall not mortgage the same, or give any lien thereon." The purchase from Bunting, set out in the declaration, was, in substance and fact, made by the company, through its committee or agents, of whom the plaintiff was one, although not made in its corporate name, as authorized by the act. The declaration shows, that the agents were authorized, as the agents of the company, to make the purchase for the company; that they did make and complete it, for the benefit and on the account of the company; and that the purchase was completed by a deed to the company's agents, and by their giving bonds and mortgages, in their own names, for the very purpose of evading the provisions of this 2d section. By these means the statute was substan-

tially violated, and the company did indirectly what the statute declares they shall not do, and what it is admitted they could not lawfully do, unless by indirection. The transaction was in fraud of the statute, and the whole arrangement was illegal and void, as against an innocent stockholder. I am therefore, of the opinion that the agreement to indemnify the plaintiff was void, and that the plaintiff cannot recover in this action.

Again, the 24th section of the act declares, that "no stockholder shall be personally liable for the payment of any debt contracted by any company formed under this act, which is not to be paid within one year from the time the debt is contracted, nor unless a suit for the collection of such debt shall be brought against such company within one year after the debt shall become due." It is urged, by the plaintiff's counsel, that the debt in this case was contracted at the time the payment was made by the plaintiff upon the debt or bond against which the company agreed to indemnify him. But, if the agreement of indemnity, and the payment under it, constitute the plaintiff a creditor, holding a debt which may be enforced against an individual stockholder, I am quite clear, upon the statement made in the declaration, that such debt was "contracted" as early, at least, as January 25th, 1854. The term "contracted," as used in this section, is the past tense of the verb "to contract." There is no allegation of any contract made with the plaintiff by the company after the date I have just mentioned; and, most clearly, the principal of this debt, for which the company then in form became liable, was not to be paid within one year from that time. It is barely possible that the stockholders might be liable for two semi-annual payments of interest, when the principal was not to be paid within a year, but I am inclined to think that, even if that position can be sustained, it sufficiently appears that all the interest accruing within the year was paid by the sale of the mortgaged premises.

These conclusions render it unnecessary that I should consider the other questions raised in the cause, for they are fatal to the plaintiff's claim to recover. The demurrer is allowed. with leave to the plaintiff to amend in twenty days, on payment of costs.